# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Michael Cusano,

          Plaintiff,        Case No. 19-cv-10434

v.                                 Judith E. Levy
                                 United States District Judge

General RV Center, Fleetwood RV,
and Freightliner Custom Chassis     Mag. Judge Elizabeth A. Stafford
RV,

          Defendants.

_____/

# OPINION AND ORDER GRANTING FLEETWOOD RV
# AND FREIGHTLINER CUSTOM CHASSIS RV'S
# MOTIONS TO DISMISS [16, 17]

This contract dispute was originally brought on June 11, 2018, by plaintiff Michael Cusano in Salt Lake County Circuit Court against various defendants involved in the design, manufacture, and sale of an allegedly deficient recreational vehicle ("RV"). (ECF No. 1.) Defendants removed it to the United States District Court for the District of Utah. (ECF No. 5, PageID.74.) The case was then transferred to this Court by the District of Utah pursuant to a forum-selection clause in the underlying purchase agreement between plaintiff and defendant General

RV Center. (ECF No. 4.) Plaintiff filed an amended complaint on May 17, 2019. Before the Court are defendants Fleetwood RV and Freightliner Custom Chassis RV's motions to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6).

I. Background

On July 21, 2015, Michael Cusano purchased a 2015 Expedition 38K RV from defendant General RV. (ECF No. 41, PageID.687.) This RV was manufactured by Fleetwood RV and Freightliner Custom Chassis RV ("the manufacturer defendants"). (*Id.*) Immediately after purchase, Cusano discovered several serious defects in the RV, including (1) heavy swaying back and forth when reaching speeds over 55 miles an hour, (2) rattling and vibrating of the steering wheel, (3) defectively plumbed suspension, (4) defective refrigerator, (5) defective GPS, (6) improperly connected sliding doors and mirrors, (7) nonfunctioning light switches, (8) wheels that were out of alignment, and (9) a hydraulic foundation that would not level. (*Id.* at PageID.691.)

Cusano immediately informed General RV and the manufacturer defendants of these defects and brought the RV to a third-party shop and to General RV for repairs. (*Id.* at PageID.692.) General RV told him the

2

vehicle would be taken to Freightliner for repair. (*Id.* at PageID.693.) While the vehicle was at General RV, Cusano also contacted Freightliner, where a Robert Velarde told him that the steering linkage had been adjusted and that the "air suspension ride was 'plumbed in reverse'." (*Id.* at PageID.693.) Several weeks later, a General RV representative told Cusano his RV was ready to pick up, and Cusano retrieved it. (*Id.*)

Cusano then started preparing the RV for a long drive to New York to visit his dying mother. (*Id.* at PageID.694.) He discovered that the refrigerator was still defective. (*Id.*) Although he took the vehicle back to General RV, he left with it before repairs were completed. (*Id.* at PageID.695.) During his drive to New York, Cusano discovered the initial defects had not been resolved, and further defects became apparent. (*Id.* at PageID.696-697.) The cab began to fill with smoke. *Id.* Some time during this drive, Cusano contacted Fleetwood, which told him smoke should not be filling the cabin, and to keep the heat running in order to prevent the water tanks from freezing. (*Id.* at PageID.695.) Fleetwood also told him that—contrary to General RV's assertions—the water tanks were not insulated and had no electric heaters, and that this was why he had to keep running the heating system. (*Id.* at PageID.695–96)

3

As a result of driving the defective vehicle, Cusano sustained injuries and became physically ill. (*Id.* at 698–99.) On January 8, 2016, Cusano's mother died. (ECF No. 41-4, PageID.723.) Due to his illness, Cusano was unable to visit her as planned and missed her funeral. (ECF No. 41, PageID.699.)

When he returned to Utah, Cusano once again brought the RV to General RV for repairs. (*Id.*) On May 3, 2016, he also contacted Fleetwood, where he spoke with "Shane," who assured him that all the defects were "100% repairable." (*Id.* at PageID.700.) Shane further told Cusano that he had years of experience fixing recreational vehicles, that all its problems could be corrected, and that the heating system in this RV presented a "huge problem" which should have been detected in previous inspections. (*Id.*) Cusano never possessed the RV again, nor was it ever repaired. (*Id.*) In January of 2017, Cusano discovered his old RV had been repossessed. (*Id.* at PageID.701.) Later, Cusano discovered that General RV had used his RV for replacement parts prior to selling it as a new vehicle. (*Id.* at PageID.702.)

Cusano subsequently filed this suit in Salt Lake County Circuit Court on June 11, 2018, raising six claims against the manufacturer

defendants: (1) breach of the implied covenant of good faith and fair dealing, (2) strict product liability, (3) negligence, (4) negligent misrepresentation, (5) breach of express warranties, and (6) breach of the implied warranties of merchantability and fitness for a particular purpose. (ECF No. 1-1, PageID.16-26.) On General RV's motion, the case was removed to the U.S. District Court for the District of Utah. (ECF No. 5, PageID.74.) On July 27 and August 3, 2018, respectively, the manufacturer defendants filed motions to dismiss. (*Id.* at PageID.76-77.) On February 2, 2019, the case was transferred to this Court pursuant to a forum-selection clause in the purchase agreement. (*Id.* at 77.) On March 27, 2019, this Court ordered all pending dispositive motions to be re-filed. (ECF No. 15, PageID.236.) Pursuant to the Court's order, the manufacturer defendants refiled their motions to dismiss on March 27 and April 4, 2019 (ECF No. 16, 17).

During a status conference, the Court permitted plaintiff to file an amended complaint on May 17, 2019, inviting the plaintiff to address any issues in the pending motion to dismiss. (ECF No. 41.) However, instead of limiting the claims, plaintiff added the manufacturer defendants to additional counts, including breach of contract (Count I), strict product

liability (Count II), negligence (Count III), negligent misrepresentation (Count IV), fraud (Count V), breach of the implied warranties of merchantability and fitness for a particular purpose (Count VI), and violation of the Utah Consumer Sales Practices Act (Count VII).

The defendant manufacturer's motions to dismiss are now before the Court.

## II. Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a

formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

III. Analysis

   A. **Breach of Contract and Declaratory Relief (Counts I and VII)**

Cusano's first cause of action is for breach of contract. To prevail on a breach of contract claim a plaintiff must show that "(1) there was a contract, (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 495 Mich. 161, 178 (2014).

Cusano does not allege facts to satisfy any of these elements with respect to the manufacturer defendants. The contract for purchase of the RV was with General RV. (ECF No. 41, PageID.689.) Cusano asserts that this purchase agreement also constituted a binding contract with Fleetwood and Freightliner. (*Id.* at PageID.703–04.) But Cusano pleads no facts to support this legal conclusion.[1] To the contrary, the purchase contract explicitly provides: "it is understood by Purchaser and Dealer

---

[1] In supplemental briefing, Cusano raises privity of contract to support this claim. (ECF No. 47, PageID.855.) But Cusano has not pleaded any facts from which the Court could infer that privity of contract existed.

7

that Dealer and Purchaser are the sole parties to this Agreement. Any reference to a Manufacturer is for the purpose of explaining certain contractual relationships existing between Dealer and Manufacturer." (ECF No. 41-1, PageID.717.) Cusano's allegation that the purchase agreement also constituted a binding contract with Fleetwood and Freightliner is therefore unpersuasive. For these reasons, plaintiff's contract claim against the manufacturer defendants is dismissed.

Cusano added a related, seventh cause of action to his amended complaint, seeking declaratory relief under the Utah Consumer Sales Practices Act, U.C.A. 1953 § 13-11-19. Cusano does not plead any facts that could support declaratory relief against the defendant manufacturers. He does not set forth how the manufacturers violated the statute, nor what provisions of the statute are at issue. Instead, he merely claims that "an actual and justiciable controversy has arisen . . . as to liability for the acts and omissions" alleged in the Complaint. He does not plead factual content from which the Court could infer that he has a plausible claim for relief under this statute. *Iqbal*, 556 U.S. at 678.

## B. Strict Product Liability and Negligence (Counts II and III)

Cusano also bring claims against the manufacturer defendants for strict product liability and negligence.[2] Utah requires that strict product liability claims to be brought within two years from the time the claimant "discovered, or in the exercise of due diligence should have discovered, both the harm and its cause." U.C.A. 1953 §78B-6-706. All that is required for the statute of limitations to begin running is that plaintiff be "put on notice to make further inquiry if they harbor doubts or questions." *Macris v. Sculptured Software, Inc.,* 24 P.3d 984, 990 (Utah 2001) (citing *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996)). In Utah, negligence actions against the manufacturer or designer of a defective product must be brought within the product liability statute of

---

[2] Utah law applies to plaintiff's tort claims against the manufacturer defendants. "A federal court in a diversity action is obligated to apply the law it believes the highest court of the state would apply if it were faced with the issue." *Standard Fire Ins. Co. v. Ford Motor Co.* 723 F.3d 690, 693 (6th Cir. 2013) (quoting *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir. 1990)). In a tort action, Michigan courts apply Michigan law unless a "rational reason" to do otherwise exists. *Id.* at 693 (quoting *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 284 (1997)). A rational reason exists if a foreign state has an interest in having its law applied and Michigan's interests do not mandate that Michigan's law be applied. *Id.* Cusano is a resident of Utah, the alleged torts took place in Utah, and Cusano's relationship to both manufacturer defendants existed entirely outside of Michigan. Therefore, Utah has an interest in having its laws applied that is not overcome by Michigan's interests. *See id.* The parties do not dispute that Utah law applies.

limitations. *Utah Local Gov't Trust v. Wheeler Mach. Co.*, 199 P.3d 949, 952 (Utah 2008).

Here, Cusano first discovered numerous serious defects with his RV immediately after purchasing it on July 21, 2015. (ECF No. 41 at PageID.690–91.) On and immediately after this date he was also told by multiple mechanics about the significant problems with his RV. (*Id.*) Cusano further alleges he discovered additional defects later that year. (*Id.* at PageID.695–96.) Those additional defects included the smoke which caused Cusano's physical injuries. (*Id.*) In this period Cusano repeatedly spoke with General RV about these defects. (*Id.*) On May 3, 2016, he also spoke with a representative from Fleetwood. (*Id.* at PageID.700.)

Cusano's discovery on July 21, 2015, of numerous defects in an allegedly brand-new RV put him on notice to make further inquiry and the statute of limitations began to run. *Macris*, 24 P.3d at 990. Accordingly, Cusano had until July 21, 2017, to file a complaint alleging strict product liability. Cusano did not file this claim until June 11, 2018, nearly a year after that date. It is therefore time-barred.

Cusano attempts to resurrect his claim by arguing that the statute of limitations was tolled until January 2017 under Utah's "discovery rule." (ECF No. 20 at PageID.455.) That rule provides that the statute of limitations does not begin to run until plaintiff learns or should have learned of the facts which give rise to his cause of action. *Williams v. Howard*, 970 P.2d 1282, 1285 (Utah 1998) (citing *Klinger v. Kightly*, 791 P.2d 868, 869 (Utah 1990)). But Cusano was put on notice of these facts in 2015. The only new discoveries pleaded in 2017 are (1) that his RV had been repossessed, and (2) that General RV had been using his RV for replacement parts in other vehicles before they sold it. (ECF. No. 41 at PageID.701–02.) Neither could support his strict liability claim. Cusano had no contact with either of the manufacturer defendants after May 3, 2016, (*id.* at PageID.700), and he does not allege learning anything new about their involvement after that date.

The statute of limitations expired long before Cusano brought his complaint. Accordingly, Cusano's product liability and negligence claims against the manufacturer defendants are both time-barred.

### C. Negligent Misrepresentation and Fraud (Counts IV and V)

Cusano also brings claims for negligent misrepresentation and fraud against these defendants. Unlike the negligence claim in this case, actions for negligent misrepresentation are subject to the general four-year limitation period set forth in U.C.A. 1953 § 78B-2-307, and this cause of action is therefore not time-barred. *DOIT, Inc. v. Touche, Ross & Co.*, 926 P.2d 835, 842 (Utah 1996).

To prevail in an action for fraudulent intentional misrepresentation, plaintiffs must show:

> (1) that a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing there was insufficient knowledge upon which to base such a representation, (5) for the purpose of inducing the other party to act on it and (6) the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely on it (8) and was thereby induced to act (9) to that party's injury and damage.

*Shah v. Intermountain Healthcare, Inc.*, 314 P.3d 1079, 1085 (Utah App. 2013) (quoting *Armed Forces Ins. Exch.*, 70 P.3d 35, 40 (Utah 2003)). The elements of negligent misrepresentation are similar, except that negligent misrepresentation does not require "the intentional mental

state necessary to establish fraud." *Id.* (quoting *Price-Orem Inv. Co. v. Rollins, Brown & Gunnell, Inc.*, 713 P.3d 55, 59n2 (Utah 1986)).

Cusano brings these claims regarding two individuals who worked for the manufacturer defendants. After discovering the initial defects, Cusano spoke to Robert Velarde, a representative of Freightliner. Velarde represented that (1) the steering linkage had been adjusted and (2) the air suspension ride was not functioning and was "plumbed in reverse." (ECF No. 41, Page ID.693.) Cusano does not allege that these representations were false, nor that he reasonably relied on them, nor that such reliance caused him harm.

With respect to Fleetwood, Cusano identifies one representor – Shane – who told him that the RV's defects were "100% repairable." (*Id.*, PageID.700.) Although this representation may have been false, Cusano does not plead any facts from which the Court could infer detrimental reliance. To the contrary, Cusano was no longer in possession of the RV by the time he spoke with Shane. The financial, physical, and emotional harms alleged had already been incurred.

Cusano further alleges, without identifying a representor, that someone at Fleetwood told him "smoke should not be filling the cab," that

13

the water "tanks were not insulated" and that he had to "keep running the heater." (ECF No. 41, PageID.698.) Since Cusano alleges that these claims were true (*id.* at PageID.696) they also cannot form the basis of a negligent misrepresentation claim.

In sum, Cusano does not plead that any of the manufacturer defendants' representations caused him harm. The negligent misrepresentations identified by Cusano as causing him harm all came from General RV representatives. (*Id.* at PageID.708.) He does not plead facts to state a plausible claim of negligent misrepresentation against either of the other defendants. *Iqbal*, 556 U.S. at 678.

Because Cusano does not plead a factual basis for the elements of negligent misrepresentation, his fraud claim also fails.

### D. Breach of Implied Warranties (Count VI)

Cusano's final claims against the manufacturer defendants are for breach of the implied warranties of merchantability and fitness for a particular purpose. Cusano's pleading is clearly insufficient on this claim. He provides only a "formulaic recitation of the elements" of this cause of action. *Twombly*, 550 U.S. at 555. He alleges that (1) "[d]efendants had reason to know the particular purpose for which the RV was required,"

(2) "the RV was in fact not merchantable or fit," and (3) "defendants' breach of implied warranties was a proximate cause of the [defects]."[3] (ECF No. 41 at PageID.712.) Those allegations are conclusory, and no facts are pleaded to support the third. While it is clear that the RV was not fit for his use by the time it reached Cusano, nothing in the pleadings suggests that the RV's problems were caused by manufacturer defendants' breach of their warranties. For this reason, his pleading is insufficient.[4]

## IV. Conclusion

For the reasons set forth, plaintiff's allegations fail to state a plausible claim for relief against either of the manufacturers. Accordingly, the Court **GRANTS** the defendants' motions to dismiss

---

[3] In briefing, Cusano additionally asserts that "Upon information and belief, the product defects in the chassis are the cause of the 'herding.'" (ECF No. 21, PageID.476.) This is not pleaded in the complaint nor do the pleadings contain any factual allegations that could support such an inference.

[4] Additionally, Cusano pleads elsewhere that General RV had replaced parts on the RV prior to selling it. (ECF No. 41, PageID.702.) This allegation directly undermines his claim for breach of implied warranties. According to Cusano, these alterations by General RV, rather than the manufacturer defendants, played a significant role in his injuries. Therefore, he likely could not succeed on his breach of warranty claim against manufacturer defendants even if it had been more adequately pleaded. U.C.A. 1953 §78B-6-705.

(ECF Nos. 16, 17) and dismisses Fleetwood and Freightliner from the case.

IT IS SO ORDERED.

Dated: July 16, 2019
    Ann Arbor, Michigan

s/Judith E. Levy
JUDITH E. LEVY
United States District Judge